# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 7, 2003

## STATE OF TENNESSEE v. JAMES A. JOHNSON

**Direct Appeal from the Circuit Court for Hardin County**
**No. 8137     C. Creed McGinley, Judge**

---

**No. W2002-02448-CCA-R3-CD  - Filed January 29, 2004**

---

The defendant appeals his convictions and sentences on two counts of aggravated sexual battery. The defendant was sentenced to two twelve-year terms, to be served consecutively for an effective sentence of twenty-four years. The defendant asserts three issues for review: (1) insufficiency of the evidence to support the convictions; (2) error in the use of enhancement factors in determining the length of the sentences imposed; and (3) error in ordering the sentences served consecutively.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Guy T. Wilkinson, District Public Defender, and Richard W. DeBerry, Assistant Public Defender, for the appellant, James A. Johnson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; G. Robert Radford, District Attorney General; and John W. Overton, Chief Deputy District Attorney, for the appellee, State of Tennessee.

## OPINION

On December 12, 2001, Officer Brian Rich of the Savannah Police Department, responded to a dispatch concerning a disturbance at the defendant's residence on Fairgrounds Road in Savannah. Officer Rich stated that upon his arrival, the defendant, James A. Johnson, was in the living room, wearing only shorts, and appeared intoxicated. His two young daughters, the victims, were on the front porch with some adults. He described both children as being "scared and upset." After interviewing the children separately, a decision was made to turn the children over to the Department of Children's Services. While the defendant was still in the company of the victims, Officer Rich heard the defendant telling the victims about gifts he was getting them for Christmas.

The younger victim, ten years old, testified as to the events that occurred earlier in the day of December 12, 2001. She said that the defendant entered the bathroom as she was taking a bath. After her sister brought the victim's clothing in and left the bathroom, the victim asked the defendant to please leave. He refused, and when she got out of the tub, he began touching her genital area. The defendant ordered the victim to bend over, and he tried to put his finger in "the wrong place." The defendant was seated on the toilet with his pants around his ankles. The victim put on her clothes and ran out of the bathroom.

Later that evening, the younger victim was ordered by the defendant to take a shower. When she resisted, he threatened to whip her. She took a quick shower and put on a night shirt and underwear. The defendant came into the bathroom, ordered her to remove her pants, and again threatened to whip her. The defendant then touched her genital area while seated on the toilet with his pants around his ankles. She described the defendant's condition as "really drunken."

She then recounted a similar incident that occurred while her family resided in a trailer park in Savannah. The defendant ordered her to pull her pants down, and he touched her and tried to "french-kiss" her. She said the defendant was also drunk on that occasion, and at both times, her mother was away at work.

The victim was questioned about a note written by the defendant after his arrest, and she stated that her mother had read it to her. She agreed that the following quotes from the note were among those read to her:
a. "Baby, if you don't wont [sic] daddy to watch you I don't have to"
b. "Baby the only way they will stop doing this stuff is if you and [other victim] tell them daddy didnt do nothing and that Leila lies all the time. Daddy promis[sic] nothing like this will ever happen again."

On cross-examination, she stated she had never discussed these events with anyone except her sister, the older victim.

The older victim was eleven years old at the time of the defendant's arrest on December 12, 2001. She had opened the bathroom door and witnessed her sister bent over, touching her toes and saw what the defendant was doing to the younger victim. When Leila, her aunt, returned to the house, she recounted these events to her. They then went to Burger King where her mother worked, and Leila relayed the information to the mother.

During the interview with the police, the older victim informed them of similar acts done to her by the defendant while the family resided in the trailer park. She stated that the defendant had placed his hand under her panties and touched her vagina.

During cross-examination, she admitted that she had told Kathy Carroll that these alleged events never happened and that Leila had instigated the matter. She also said that Leila had prompted the girls to steal for her. During redirect examination, the older victim stated that the

events she had recounted as happening to her at the trailer park and what she had witnessed happening to her sister were the truth.

The defendant testified in his own behalf and denied any inappropriate touching of his two daughters. He admitted writing the letter previously referenced but denied any intent to influence the victims' testimony. He stated that the letter was intended to let them know he still loved them. He attributed the victims' versions of events to the influence of his sister, Leila. He stated he had confronted Leila about her stealing and mistreatment of the victims. He said the instant accusations arose after this confrontation.

On cross-examination, the defendant was asked about selected quotes from correspondence to his wife. He stated they were not intended to influence the children's testimony, but he wanted the truth told. The following are selected quotations which the defendant did not deny:

a. "Ask them if they want their daddy in prison or maybe even dead."
b. "Ask them if they're happy breaking our family up like this. They should be told they are the reason this s--- is happening to us and them and that they did it."
c. "Let them know I need their help to get out of jail. Let them know that daddy wants a big place where they can have their own tv's and their own beds."

Christopher Angelucci testified that he had known the defendant two or three years and had never witnessed him abuse his children. Jennifer Angelucci said she had known the defendant one year and considered him truthful.

**Analysis**

When the sufficiency of the evidence is challenged, the relevant question for an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). We do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A guilty verdict removes the presumption of innocence on behalf of the defendant and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

Aggravated sexual battery is defined by Tennessee Code Annotated section 39-13-504(a)(4), in pertinent part, as follows:

(a) [U]nlawful sexual contact with a victim . . . accompanied by any of the following circumstances:
(4) The victim is less than thirteen (13) years of age.

"Sexual contact" includes the intentional touching of the victim's intimate parts if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification. Tenn. Code Ann. § 39-13-501(b).

It is undisputed that both victims in this cause were less than thirteen years of age. The younger victim gave graphic testimony as to the defendant's fondling of her private parts on two occasions on December 12, 2001, and an earlier incident at a different location.

The older victim testified to similar fondling by the defendant at the family's prior residence. Although she admitted denying these allegations in an out-of-court statement to a third party, she reaffirmed the allegations in her testimony as the truth. It is obvious that the jury accepted her testimony as the truth by their guilty verdict on Count Two. The jury was equally entitled to infer an admission by the defendant from his letter to the victims. Both convictions are amply supported by the evidence and are affirmed.

The defendant next contends that the trial court erred in the application of the enhancement factors in determining the length of sentences. This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the

trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002); see Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming the trial court has complied with the purposes and principles of the sentencing act and its findings are supported by the record. Madden, 99 S.W.3d at 138. The statutes prescribe no particular weight for an enhancement or mitigating factor. State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). A defendant's sentence "is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years." State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)).

It appears from the record of the sentencing hearing that the trial court followed the statutory directives concerning sentencing. Tenn. Code Ann. § 40-35-114(1) (2000). Two enhancement factors were found. The first was that the defendant had a past criminal history. The defendant had been convicted of driving under the influence and driving on a revoked driver's license. These were considered as one offense due to their arising from the same set of circumstances. The trial court chose not to consider a letter introduced at the sentencing hearing from the defendant to his wife. The letter contained requests by the defendant to have marijuana smuggled into the jail for his own use and to sell.

Great weight was given to the fact that the defendant had a position of private trust that significantly facilitated the commission of the offenses. Tenn. Code Ann. § 40-35-114(15) (2000). In its application of this factor, the trial court stated:

It goes without saying that the relationship of parent and child is that of private trust, and he abused this, took advantage of it, in a horrible, horrible manner to facilitate the commission of his crime, and the court accords great weight to that.

The trial court refused the defendant's request to apply as a mitigating factor that there was no serious bodily injury caused by the offenses. Tenn. Code Ann. § 40-35-113(1) (1989). Having made these findings, the trial court sentenced the defendant to twelve years on each count.

In review of the sentencing, we are bound to accord the trial court discretion in the weight given to each enhancing factor. Madden, 99 S.W.3d 127, 138. We conclude that the application of the enhancement factors were appropriate. The proposed mitigating factor, even if allowed, would have been entitled to little weight. Accordingly, this issue is without merit.

Finally, the defendant contends that the trial court erred in imposing consecutive sentences. In sentencing, the trial court found that the defendant was a "classic example," justifying consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(5).

When a defendant is convicted of more than one offense, the court may order the sentences to run consecutively if the court finds by a preponderance of the evidence that:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5).

The trial court mentioned the time span of the defendant's undetected sexual transgressions and the necessity that the State elect specific instances as to each victim. The trial court also observed that although no expert proof was adduced concerning psychological damage to the victims, there was lay proof of lingering effects on the victims' behavior.

After careful review of the entire record, we affirm the sentence imposed by the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE